Good morning and welcome to the 11th Circuit. We are very happy to have you here with us today and we are very happy, Judge Branch and I are very happy that we also have Judge Jackie Becerra from the Southern District of Florida who is sitting by designation with us this week. We really appreciate all the help that she's giving us and I think you'll enjoy presenting your arguments before her. Just a quick reminder before we get started about our lighting system, when the yellow light goes on it means that you have two minutes left. When the red light goes on your time is up. We ask that you please conclude promptly at that time. The only exception is if we have questions that we ask that take you over the red light time. Please do answer the questions. We want to hear your answers to our questions or we wouldn't ask them. But other than that, we do ask that you please respect the timing. All right. With that, our first case today is United States v. Tollen. We'll hear first from Ms. Fussell. Good morning, Your Honors, and may it please the Court. The government did not meet its burden of proving that the victim was incapable of appraising the nature of the conduct under 2242-2A. The government's evidence consisted largely of a federal agent's vague secondhand descriptions of the victim's mental challenges. There was no expert, no medical documentation, no school records, no psych eval, not even any testimony from someone who knew or had spoken with the victim. Let me ask you a question. The two video interviews were before the District Court, right? Yes, Your Honor. Okay. I think the biggest challenge, at least, and I haven't spoken with my colleagues about it, so I don't know their thoughts, but for me, I think the biggest challenge that you have are the things that the victim here said. She said, when asked about what she thought when Mr. Tollen engaged in this conduct, quote, I was confused. I didn't know what he was doing. And she also said that after, it wasn't until after the grandmother found the two of them that she looked up whether it's illegal to penetrate a 14-year-old. And so, both of those things, to me, tend to suggest that she didn't really understand what was going on. She didn't understand that this was something that he shouldn't be doing, that he was violating her. She didn't have any understanding of that. And to the contrary, it seemed like she thought maybe it was okay because she kept saying that he said that he loved her and she was so special to him and she shouldn't leave him, and things of that nature. So, I need you to address, for me, why that doesn't mean that the District Court's factual finding here wasn't clearly wrong. Yes, Your Honor. And I think any victim of a similar act would be confused. I don't think that's atypical at all. With respect to the legal research, I think the fact that she was able to consider what happened to her and research the illegality of it, if anything, indicates that she was capable of appraising the nature of the conduct. And before the- So if she didn't think to even look it up before all of this happened, which was going on for over a year, and she looks it up for the first time to find out whether it's illegal or wrong after she's caught and the grandmother is all upset, why doesn't that seem to suggest she didn't understand that this wasn't something that he should be doing? Because Your Honor, even if she looked up the legality of it later, she knew that it was wrong from the beginning. In the hospital interview, she says from the get-go that whenever he first did this, that she told him that he couldn't be doing this to people. She makes very clear that she thought it was wrong, that she felt unsafe the entire time. And before anyone said anything to her about penetration, which is what she legally researched, she reported to her mother before her grandmother said anything that he had penetrated her vaginally and anally. So she used- I don't think that's what she said. I think it was clarified that she told her mother that after the grandmother caught them. Your Honor, it's correct that it's after the grandmother caught them, but the grandmother did not catch them in the act of penetration. The grandmother caught them only with their clothes off in the room. So it's- To be clear, what happened, I understood the record to suggest or to say that when she got home, she was in tears and distraught because her grandfather had told her that if she said anything, she wouldn't be able to go back and see her grandmother again. She was upset, thinking that she would not be able to go see her grandmother. And it was upon questioning from her mother that the mother was able to elicit the conduct. It wasn't like, it wasn't that she reported it the way I think you're suggesting. Respectfully, Your Honor, there's nothing in the record that indicates that the mother asked her whether she was penetrated. Instead, the mother asked her why she couldn't return to her grand- why she thought she couldn't return to her grandmother's house. And then the daughter- and then her daughter supplied that information. So she understood that what happened was so significant and so bad that it was going to have this lasting impact on her family and that she was not going to be able to return there. So her being sad that she's unable to see her grandmother is her being sad about the lasting impacts of what happened. She understands that that is extraordinarily significant. How do you get around the fact that her recognition, her- it starts to dawn on her that something is wrong in this situation only when- only after her grandmother comes in and reacts? Respectfully, Your Honor, the record doesn't support that that was the only time she thought it was wrong. The victim's own words tell us that she thought it was wrong from the get-go and that she told Mr. Tolan from the first time that he couldn't be doing that to people. You said something earlier that I'm curious. You said, I think- you said, respectfully, I think any victim would be confused. What is- what do you mean by that? I think it's very confusing if someone that you trust and who is in a position of care- of taking care of you does something to violate you in that way. What about her statement, quote, I didn't know what he was doing? She said, Your Honor, respectfully, I think that she didn't know what he was doing at first, but then she also says that she told him then that he couldn't be doing this to people. So it's- When you listen to the whole- when you listen to the entirety of both of the interviews, that it's not- it wouldn't- it wasn't clearly erroneous for the district court to conclude, especially given this particular victim's alleged intellectual disabilities, that that's not- that that's not what she meant, that she told him that it wasn't okay or that she was told that- because later she uses those exact words to say that her grandmother came in and said that's not okay. I mean, it's like word for word what she originally said she said. So I'm not sure. And then if- if it also kind of begs the question, why would she look it up on the internet after over a year of doing this about whether it's okay, if she understood from the get-go that it wasn't okay? I think- I think the problem here is you're up against a hard standard of review. And so, given the entire rest of the hour and a half of interview time in that context, I think you need to explain why the evidence is erroneous. Yes, Your Honor. And- and to be clear, she didn't just say that it wasn't okay and repeat her grandmother. Instead, she said that she told him he couldn't be doing this to people. And I think that's the thing. Whenever you look at the entire video, which I think is the issue, the district court zeroed in on her flat affect. That's what the district court heavily relied upon. And the question is, does that show, combined with the evidence of her mental disabilities, that she's incapable of appraising the nature of the conduct? And yes, the court gives deference to the factual findings, but clear error review doesn't mean that the court should accept an inference that's not supported by the record. Some other things other than the video. As I read the record here, you certainly didn't contest that the child had autism. Is that correct? Correct, Your Honor. You didn't contest that she was medicated for ADHD. It didn't appear to me that you were contesting that she had anxiety for which she was medicated, that she had been nonverbal for the first seven years of her life, that she read at a third grade level, and that her IQ was in the 60s. Those are all things the defense concedes, no? Your Honor, the defense concedes that the agent testified to those things. But there's no actual evidence in the record, for example, that she was, even the agent didn't testify that she was medicated. The record tells us that there's no evidence in the record indicating she had any kind of special accommodations at school, she was in regular classes. I don't think that's accurate, because the record also had the interviews of the parents. I mean, there were other things, both the PSI and in the record. Are you contesting that she had an IQ in the 60s? It didn't appear to me that you contested that. No, Your Honor, we're not contesting that. But the record does make clear, and the agent's testimony makes clear, and the interviews make clear that she was in regular classes at school. So the issue is, well, these are all mental challenges, and we acknowledge that. There's no evidence in the record connecting those mental challenges to an inability to appraise the nature of the conduct. There's no evidence that says that those things... Except for the videos, in which the district court viewed. Your Honor, and the district court relied on her flat affect in those videos, which there's no evidence that supports the inference that because she was not visibly distressed in the videos, when we know she was visibly distressed at the outset, there's no evidence that indicates that that means that she's incapable of appraising the nature of the conduct. There's no, for example, expert testifying that, you know, because she has these mental issues that her lack of emotion means that she's incapable of understanding what we have... Is it in your position that an expert is necessary to apply this enhancement? Not categorically, Your Honor, but there needs to be some evidence tying her mental challenges and her flat affect, if the district court is going to rely on it, to her incapability to appraise the nature of the conduct. We don't have here, even, for example, her parent coming in and saying, she never understood sexual conduct. We tried to explain it to her and she didn't understand. We don't have them saying that she had any understanding issues. There's none of that. There's just simply the claims that she has these mental issues and she's incapable of appraising the nature of the conduct. And the cases that we cite show that that's an important consideration. There's the recorded call that the grandmother has with the grandfather where she tells him, you know she's got problems, I forget what the exact wording was, and your client, she's not right, and your client conceded that. Correct, Your Honor. We concede that she has special needs. We're not disputing that, but the question is, do those special needs alone, plus her flat affect, because that's what all the district courts rely on, does that mean she's incapable of appraising the nature of the conduct, which would mean, you know, that because those factors are staying the same, that she would be unable to appraise the nature of sexual conduct ever. It's quite a bold stance whenever the only evidence is that she has these mental challenges and that she has a flat affect. So to say without any evidence connecting the mental challenges and flat affect to her incapability of appraising the nature of the conduct, that just those things are enough, no, we don't think that the record supports that inference. I think they would need more. Whether that's an expert or whether that is someone that knows her or has spoken to her testifying, you know, that depends, I think, on a lot of circumstances, but here, just the claim of mental challenges and the flat affect is not enough to say she's incapable of appraising the nature of the conduct. All right. Thank you, Ms. Fussell. You have reserved five minutes for rebuttal. We'll hear from Ms. Tiffin. Good morning, and may it please the Court, Dawn Tiffin on behalf of the United States. The panel has already pointed out some excellent points from the record, some of the compelling evidence that certainly supported the application of this enhancement. I would like to add one more from the second video, the forensic interview of the victim. At approximately the 25-minute mark, she's asked, whose idea was it to put Grandpa's penis in your mouth? She answers that it was his, and she's asked a follow-up question, how do you know that it was his idea? And she pauses for a moment, and she answers, I don't know why he did this in the first place. I just don't know why he wanted to do this. I just don't know. And that statement is indicative that she did not have the capacity to appraise what was happening to her throughout the course of this sexual abuse. It is true that the video was what the district court relied on primarily in applying this enhancement, but it doesn't follow that the judge was not able to use his personal experience, the human experience that we all have, where we gauge somebody's understanding or intentions. The words here that the victim used in both interviews was important. The context of those words was important, but her mannerisms, her tone, her inflection, all those things together allow the district court to reasonably find that she lacked the capacity to appraise the nature of this sexual abuse. What about her statement in the first interview at the very beginning where she says, I told him it was not okay, and he can't do this? Well, there are some inconsistencies between these two interviews, first. Second of all, the district court judge was free to resolve those conflicts whichever way he needed to do in order to assess whether this was an appropriate enhancement to apply. But also, that fact, any conflict between those was not brought up before the district court below. Mr. Tolan never alleged that there were inconsistencies, much less that the district court judge should rely on a set of statements from one interview over the other interview. So I can't be sure that this was an issue for the district court judge. What I can be certain of is the concrete statements that the victim made in her interview nine days later, and the district court was free to rely on those. I think that Mr. Tolan's criticisms, one, that there was no expert that testified to sort of bridge a gap between what these mental diagnoses were and how it affected the victim's capacity to appraise the nature of the sexual abuse. Also, that there were no school records and that there were no medical records. But none of those things are necessary to prove the application of this enhancement. This is a preponderance of the evidence standard. And on appeal, we're talking, as the panel has already pointed out rightly, that this is a fairly inflexible, clearly erroneous standard that is just impossible for Mr. Tolan to overcome under these circumstances with the evidence that we have. And any suggestion that there needs to be a sort of expert opinion, whatever type of expert, or even testimony from somebody that knows the victim in any certain way, it's just a perversion of the guideline. The guideline doesn't require that, nor does the statute 2242. So the court had enough here to make its reasonable determination that the victim lacked the capacity to appraise the nature of the sexual abuse perpetrated against her by her grandfather. So we would ask this court to affirm. All right. Thank you, Ms. Tiffin. Ms. Fussell, you have five minutes. Thank you, Your Honor. The record in this case tells a story of a victim who understood that she was wrongly subjected to sexual abuse. She accurately reported it, described her abuse, identified who committed it, expressed concerns about the impact the abuse would have on her family, explained that it was wrong, researched it, learned it was illegal, and communicated that understanding to others. We don't need to paint her as incapable to hold Mr. Tolan accountable. The tragic facts here do not relieve the government of its burden to show that she was incapable of appraising the nature of the conduct. And just evidence of her mental challenges is not enough to do that. As the government mentioned, there is a gap that needs to be bridged here. You have to somehow show that these mental challenges and the flat affect mean that she's incapable of appraising the nature of the conduct. And the government put forth absolutely no effort into doing that. But how would they do that? You seem to be suggesting, and I don't know of any case that supports this, that you have to then have expert testimony. No, Your Honor. We're not suggesting that you have to have expert testimony. How would you bridge that gap then? Well, Your Honor, I will say that all the cases cited in both of our cases that deal with similar issues did have expert testimony. I think that's the most sensible way. But I don't think you need it. For example, I think that you could have someone that testifies as to her understanding of sexual conduct. Or I think you could have, if there was evidence in the videos, like for example, in the cases that we cited, there were people that testified saying like, oh, you know, she didn't understand sex. Or it was clear that the victim didn't understand sex because they said as much. Or the disability was so profound that it was clear that they couldn't possibly understand even the physiological nature of sex. And I think here, we don't have that. We have quite the opposite. We have a victim who at least says, you know, the government can say there's inconsistencies, but at least says she told him to stop and said that it was wrong from the get-go, who reported it to her mother even though her grandmother hadn't seen the part that she reported. So she doesn't, she assigns significance to the penetration. She doesn't just think the grandmother is mad because of what she saw. How does the Google search play into your argument? It seems to suggest that she doesn't understand what was done to her and is only reacting to what happened when the grandfather, the grandmother interrupted them. Your Honor, I think that the fact that she was able to conduct legal research tells you that she has the capacity to understand what happened. Okay, conduct legal research and then just doing a Google inquiry are kind of two different things. Your Honor, I think that if you're researching the illegality of something that happened to you, I do think that's conducting legal research. I think the fact that she's researching the more long-term concrete consequences of this shows that she's capable of understanding that. And I think too that the statue, right, that triggers the cross-reference, it says incapable of appraising the nature of the conduct. It is not a standard that requires her to know and understand all the law surrounding it or any of it. That's true, but she did say, I didn't know what he was doing. Your Honor, that's correct. At first she didn't know what he was doing. And I think that would be again, like I think a lot of, a lot of victims in a situation where someone they trust is violating them, do not know what's happening at first. They think maybe this cannot be, but that doesn't mean that she doesn't have the capability of appraising the sexual nature of conduct. I didn't know what he was doing is, is different than saying, you know, I, I, I didn't expect him to do something like this to me or I, I didn't, which, which I think would suggest that he, she understood the nature of what was happening, but I didn't know what he was doing. I mean, the plain meaning of that to me seems like I didn't understand what was going on. I didn't, I didn't understand the acts that were happening. Your Honor, I think, I think the videos in their entirety paint a different picture. I think that it shows that she did know what was happening. Like, you know, she, she reported the penetration to her mother, even though no one had seen it. She obviously assigned some significance to it and knew that it was sexual nature. And I think that's why the district court didn't rely at all. But only after, after the grandmother caught them and she looked it up and found out that it was illegal and. Your Honor, but the grandmother did not catch them in the act of penetration. So clearly she assigned significance to that and it wasn't just because her grandmother knew about it, because her grandmother did not in fact know about it. And so I think it's telling that the, I see my time has expired, Your Honor. You can finish answering the question. Okay. So I think that it's clear that the, that the district court didn't assign much significance to the fact that she said she didn't know. And I think it's because of all the other things she said in the video. Where the district court zeroed in on was her flat affect and cited the mental challenges as well. And we don't have evidence in the record connecting flat affect and mental challenges to an incapability to appraise the nature of the conduct sufficient to meet the government's burden. All right. Thank you very much. Okay.